**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **Thomas Warren,** | |
| *Plaintiff*, | Case Number: 3:20-cv-292 |
| v. | Ad Damnum: $2,000 + Atty Fees & Cost |
| **Experian Information Solutions, Inc.,** | |
| *Defendant*. | **Jury Trial Demanded** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Thomas Warren** ("**Mr. Warren**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Experian Information Solutions, Inc. ("**Experian**"), and states as follows:

### PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Warren against Experian for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2.      Jurisdiction arises under FCRA, 15 U.S.C. §1681p, and 28 U.S.C. §1331.

3.      Experian is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §1331.

4.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by Experian within Duval County.

## PARTIES

5.    Mr. Warren is a natural person residing in Jacksonville, Florida and is a *Consumer* as the term is defined by the FCRA, 15 U.S.C. § 1681a(c).

6.    Experian is an Ohio corporation, with a primary business address of 475 Anton Blvd., Costa Mesa CA 92626.

7.    Experian is registered to conduct business in the State of Florida and its Florida Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

8.    Experian is a nationwide Credit Reporting Agency ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### EXPERIAN'S MISREPORT RESULTS IN MORTGAGE DENIAL

9.    On or about March 1, 2020, Mr. Warren sought to obtain a mortgage from The Mortgage Firm, Inc. ("**Mortgage Firm**") to purchase a home for him and his wife.

10.    At the time, Mr. Warren was confident that he would be approved for a loan because he had excellent credit, with scores in the mid-to-upper 700's.

11.    On this basis, Mr. Warren had located a home and begun negotiations for its purchase.

12.     In order to review Mr. Warren's credit, the Mortgage Firm requested a tri-merge report from Certified Credit who, in turn, requested information from the three major CRA's – Experian, Trans Union, and Equifax.

13.     In Experian's response to Certified Credit ("**Experian's Response**"), Experian provided a plethora of incorrect information about Mr. Warren, abrogating its duty to provide maximum possible accuracy under the FCRA, 15 U.S.C. § 1681e(b). The report provided by Experian to Certified Credit also revealed the fact Experian had, in the recent past, provided reports of Mr. Warren's credit history to third parties without a permissible purpose, in violation of FCRA § 1681b. **See Plaintiff's Exhibit A,** *Generally*

14.     As a result of the false contained within Experian's Response, Mr. Warren was denied a mortgage for which he was otherwise completely qualified, suffered humiliation, and has had to make alternate living arrangements, and was forced to continue spending money on rent, rather than put that money toward equity in his own home.

## THE MIXED FILE

15.     On information and belief, Experian's Response is textbook example of a "mixed file" – a credit report which contains information concerning two or more persons rather than the individual about whom it was requested.

16.     The mixed file resulted from Experian's reckless and improper methods by which it connects data reported to it by various furnishers to its internal files.

17.     In an aggressive attempt to match every record reported, Experian's automated systems often erroneously match tradeline information to a consumer's credit file with minimal commonalities – even if the tradeline data contains a substantially different name, date of birth and Social Security number than the target consumer's.

18.     In the instant matter, Experian's systems apparently matched a Mr. Thomas Cumming ("**Mr. Cumming**") of Pace, Florida with Mr. Warren, on the basis of little more than the fact that they shared the same first name and common state of residence.  *Id.*

19.     Mr. Warren lives in Jacksonville, which is approximately 360 miles from Mr. Cumming's residence in Pace.

## FALSE ACCOUNTS

20.     Experian's Response, unlike those of its competitors Trans Union and Equifax, indicated that Mr. Warren had the following nineteen (19) accounts which were not actually his:

- Gulf Winds Credit Union (nine separate accounts)
- United Bank
- Synchrony Bank / PepBoys ("**PepBoys**")
- Citibank North America/Home Depot (shown as "THD / CBNA")
- Best Buy / CBNA
- GM Financial
- Independent Bank
- Sears / CBNA
- Sheffield Financial Co. (two different accounts)
- Synchrony Bank / Hanks Fine Furniture
- Synchrony Bank / Lowes
- Synchrony Bank / Mega Group USA

(the "**False Accounts**")  ***Id.***

21.     On information and belief, <u>all</u> of these accounts belong to Mr. Cumming.

22.     By reporting these False Accounts, several of which included substantial balances, Experian indicated that the amount owed by Mr. Warren to various creditors, and the monthly payments which Mr. Warren was obligated to make, were substantially higher than they actually were.

23.     For example, the Gulf Winds Credit Union auto loan of $33,740 reported a monthly payment of $530, which Mr. Warren's lender was obligated to include in his monthly debt-to-income ratio calculations.

24.     Because Experian's Response included these False Accounts, Mr. Warren's debt-to-income ratio was too high for the Mortgage Firm to provide him with a loan.

25.     Indeed, but for the inclusion of these False Accounts, Mr. Warren would have easily qualified for and received a loan, and be preparing to move into his new house.

### FALSE SOCIAL SECURITY NUMBER

26.     In addition, Experian's Response falsely indicated that Mr. Warren's SSN was XXX-XX-84**5**7, one digit off from Mr. Warren's true *Social Security Number* ("**SSN**"). **Emphasis Added.** *Id.*

27.     Mr. Warren's correct SSN is XXX-XX-8467.

28.     Mr. Warren has had the same SSN his entire life and has not obtained, nor ever used, any alternate SSNs.

29.     Because Trans Union and Equifax reported Mr. Warren's correct SSN, Experian's inclusion of a false SSN on the tri-merge report implied that Mr. Warren used multiple SSN's and engaged in fraudulent conduct.

### MULTIPLE NAMES

30.     Experian's Response also indicated that Mr. Warren was also known by the names, "Thomas E Cumming" and "Tom Cumming." ***Id.***

31.     Mr. Warren has never used the surname of "Cumming" or indeed any surname besides "Warren," and, on information and belief, is not known by Cumming or any other surname.

32.     The presence of multiple names on Experian's Response has a similar negative impact as it suggests that Mr. Warren has used an alias in his business dealings for some improper purpose.

### PROVIDING INFORMATION WITHOUT A PERMISSIBLE PURPOSE

33.     Experian's Response indicates that on January 15, 2020, Experian received a credit inquiry from Synchrony Bank / PepBoys for Mr. Warren's credit report.

34.     Mr. Warren never applied for a PepBoys credit account.

35.     On information and belief, Mr. Cumming applied for the PepBoys account, and according to Experian's Response, Mr. Cumming was granted a credit card by PepBoys.

36.     On information and belief, when Mr. Cumming applied for the PepBoys card, Experian provided the information contained in Mr. Warren's credit file to PepBoys.

37.     As Mr. Warren had not authorized PepBoys to request his credit report, nor did Mr. Warren have any business transaction with PepBoys which might even theoretically create permissible purpose for it to obtain a credit report regarding Mr. Warren, and as Mr. Cumming would not have had Mr. Warren's information to provide to PepBoys as if to impersonate him, PepBoys neither wanted nor requested Mr. Warren's credit report. Rather, it specifically requested a report on Mr. Cummings.

38.     Hence, when Experian provided Mr. Warren's credit report to PepBoys, it did so without any authorization to do so by Mr. Warren or any request from PepBoys, and therefore without any permissible purpose, as that term is used within the FCRA.  See 15 U.S.C. §1681b.

**Experian's Duty to Prepare Reports With Maximum Possible Accuracy**

39.     The FCRA is clear in its requirement that Experian, as a CRA, is required to prepare accurate reports:

> Accuracy of Report.    Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

40.     Certified Credit requested a report concerning Mr. Warren.

41.     Experian was required to then follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Warren.

42.     Matching records concerning another individual, with a different Social Security number, a different address, and presumably a great deal of other information which does not match, is inherently an unreasonable procedure for assuring maximum possible accuracy.

43.     Experian thus failed to use reasonable procedures when preparing the aforementioned Response.

44.     As a result of Experian's failure to prepare reports utilizing procedures to ensure maximum possible accuracy, Mr. Warren has suffered an impaired ability to obtain credit and services as well as economic losses.

**Experian's Duty to Refrain from Third-Party Disclosure**

45.     The FCRA prohibits the disclosure of a credit report except under specific circumstances which it defines as a *Permissible Purpose*.  See 15 U.S.C. §1681b.

46.     PepBoys requested a credit report concerning Mr. Cumming.

47.     Assuming, *arguendo*, that Mr. Cumming sought an extension of credit from PepBoys and that PepBoys had a permissible purpose for requesting Mr. Cumming's credit report, Experian clearly lacked any legal basis to disclose Mr. Warren's information to PepBoys.

48.     Similarly, having received a request for Mr. Cumming's credit report, Experian could not have reasonable believed that it had a permissible purpose to provide Mr. Warren's credit report in response.

49.     Upon information and belief, Experian sold many other reports regarding Mr. Warren to third parties who requested reports on Mr. Cummings.

50.     The exact number of reports sold is, at the time of filing, unknown to Mr. Warren, but is well known to Experian, and receipts of these reports are contained in Experian's business records.

### Experian's Awareness of the Issues

51.     Experian knows that it produces credit reports concerning consumers which contain other consumers' information and that it provides information concerning consumers without a permissible purpose when this occurs.

52.     Experian maintains and staffs *an entire department* devoted to "mixed" file errors and has had judgment rendered against it on numerous occasions for violations of the FCRA's accuracy requirement.

53.     Experian could reasonably foresee that selling reports which contained numerous debts belonging to an unrelated individual would cause significant harm to Mr. Warren.

54.     Experian could reasonably foresee that producing credit reports which contain the credit data belonging to the holders of other accounts would likely cause harm to the consumer for whom the report is created and for others whose information is thereby improperly disclosed.

55.    Mr. Warren has hired this law firm to represent him in this matter and has assigned the firm his right to fees and costs.

**COUNT I**
**VIOLATIONS OF THE FCRA-- 15 U.S.C. § 1681, *et. seq.***

56.    Mr. Warren adopts and incorporates paragraphs 1-55 as if fully stated herein.

57.    Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy by matching and including information concerning another consumer, when it added Mr. Warren's credit records to those of another consumer, when the criteria used for matching was deficient as the records indicated that consumers' names were unalike, they had different Social Security numbers, and they lived more than 300 miles apart.

58.    Experian violated 15 U.S.C. § 1681b when it provided a credit report to a third party, without a permissible purpose, by providing PepBoys with Mr. Warren's credit information when Mr. Warren had not authorized such disclosure and no other basis for permissible purpose existed. Additionally, Mr. Warren believes that other unauthorized third party disclosures were made in addition to PepBoys.

59.    Experian's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy and to refrain from providing third-parties with confidential credit information without a permissible purpose, and its policies could reasonably be foreseen to cause harm to Mr. Warren.

60.    As a result of its conduct, Experian is liable to Mr. Warren pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Warren respectfully requests this Honorable Court enter judgment against Experian for:

a.    The greater of statutory damages of **$1,000** per incident (for a total of **$2,000,** based solely upon information known at the time of filing), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Warren's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

c.    Such other relief that this Court deems just and proper.


## JURY TRIAL DEMANDED

Mr. Warren hereby demands a trial by jury on all issues so triable.


Respectfully submitted on **March 23, 2020**, by:

/s/ *Philip R. Goldberg*

**Philip R. Goldberg, FL Bar #105940**
**SERAPH LEGAL, P. A.**
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
PGoldberg@SeraphLegal.Com
Counsel for Plaintiff